# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| AQUIL JOHNSON, | : | No. 18 EAP 2019 |
| | : | |
| Appellant | : | Appeal from the Order of the Order |
| | : | entered on 6/3/19 in the Commonwealth |
| | : | Court at No. 497 MD 2018 |
| v. | : | |
| | : | |
| | : | |
| JOHN WETZEL, SECRETARY PA, | : | |
| D.O.C., MARK GARMAN, SUPER., S.C.I. | : | |
| ROCKVIEW ET. AL., OFFICERS, | : | |
| AGENTS, SERVANTS, EMPLOYEES | : | |
| AND ATTORNEYS, | : | |
| | : | |
| Appellees | : | SUBMITTED: September 30, 2020 |

## *OPINION*

**CHIEF JUSTICE SAYLOR**                         **DECIDED: October 1, 2020**

This is a direct appeal from a Commonwealth Court order dismissing Appellant's amended petition for review. In the petition, Appellant claimed he was entitled to a refund of monies deducted from his inmate account pursuant to Act 84 because no procedural safeguards were in place when the deductions began. Recent decisions by this Court and the Third Circuit Court of Appeals confirm that, under the Due Process Clause of the Fourteenth Amendment, certain safeguards must be applied before the first Act 84 deduction is made in connection with a given criminal sentence. *See Bundy v. Wetzel*, 646 Pa. 248, 261, 184 A.3d 551, 558-59 (2018); *Montanez v. Secretary Pa. DOC*, 773 F.3d 472, 486 (3d Cir. 2014). The issue here is whether relief is available where the first deduction was made before those decisions were announced.

**I.**

In March 2013, Appellant was sentenced in two criminal matters to an aggregate term of approximately 20-to-40 years' incarceration. As part of the sentences, Appellant was required to pay a total of $1,166 in costs and contributions to the Crime Victims' Compensation Fund (the "Victims' Fund").[1] In light of these financial obligations, the Department of Corrections began deducting monies from Appellant's inmate account pursuant to Section 9728(b)(5) of the Sentencing Code. *See* 42 Pa.C.S. §9728(b)(5) (authorizing such deductions), *quoted in Bundy*, 646 Pa. 252-53, 184 A.3d at 553-54. These withdrawals are known as Act 84 deductions because the provision authorizing them was added to Section 9728 by Act 84 of 1998. *See* Act of June 18, 1998, P.L. 640, No. 84, §4; *Bundy*, 646 Pa. at 253, 184 A.3d at 554. The Department made the first withdrawal in June 2013, without notifying Appellant in advance.

In July 2013, upon learning of the deduction, Appellant filed an internal grievance questioning whether it was lawful. A prison counselor responded by stating that the deduction was, indeed, lawful in light of Act 84 and the financial responsibilities imposed on Appellant as part of his criminal sentences. The prison counselor added that the deductions would cease once Appellant's monetary obligations were paid in full.

In 2014, the federal court in *Montanez* held that, under the Due Process Clause, administrative pre-deprivation process was required. In particular, prior to the first Act 84 deduction the Department must notify the affected inmate of: the Department's policy concerning Act 84 deductions; the amount of his total obligation to the

---

[1] *See Commonwealth v. Johnson*, No. CP-51-CR-4929-2007, Sentencing Order (C.P. Phila. Mar. 15, 2013) (showing a balance due of $448.50, all of it in court costs); *Commonwealth v. Johnson*, No. CP-51-CR-1587-2009, Sentencing Order (C.P. Phila. Mar. 15, 2013) (showing a balance due of $717.50, all in court costs except $60, which is owed to the Victims' Fund).

Commonwealth; the rate at which funds are to be deducted; and which funds will be subject to such withdrawals. Under *Montanez*, the Department must also give the inmate (again, prior to the first deduction) a reasonable opportunity to object as a means of avoiding any potential errors in the application of the Department's policy. *See Montanez*, 773 F.3d 486.

Four years later, in 2018, this Court addressed the same due process issue in *Bundy*, and it reached a holding consistent with *Montanez*. *See Bundy*, 646 Pa. at 261, 184 A.3d at 558. *Bundy* observed that administrative pre-deprivation procedures are useful because, as *Montanez* had observed, they can help prevent errors before they occur. *See id.* at 258, 184 A.3d at 557 (recognizing a "general preference that procedural safeguards apply in the pre-deprivation timeframe").[2] The *Bundy* Court also noted that, in circumstances where procedural safeguards are not feasible in the pre-deprivation timeframe, the availability of a meaningful post-deprivation remedy satisfies the Due Process Clause. *See id.* at 258-59, 184 A.3d at 557 (citing cases).

Shortly after *Bundy* was issued, Appellant filed a grievance complaining that he never received pre-deprivation process as required by *Bundy*, and asking for a refund of all funds the Department had deducted since 2013, which totaled approximately $860. The Department denied the request for monetary relief, noting that Appellant had failed to provide documentation demonstrating that an assessment notice the Department previously issued relative to his financial obligations was in error. Still, the Department stated it would suspend further deductions for three weeks in order to give Appellant a

---

[2] In terms of Act 84 deductions, *Bundy* enumerated certain types of errors that could potentially be avoided, including: deductions from funds outside Act 84's reach (such as veterans' benefits and social security benefits); withdrawals predicated on an erroneous financial obligation; deductions from the wrong inmate's account; and deductions inconsistent with an installment plan approved by the sentencing court. *See id.* at 260, 184 A.3d at 558 (citing cases and statutes).

chance to provide such documentation. Appellant did not forward any such documentation. Instead, he lodged an administrative appeal, expressing that the suggested post-deprivation remedy was insufficient in light of *Bundy*. The Department denied the appeal.

Appellant then filed a petition for review in the Commonwealth Court, directed to its original jurisdiction, and naming as respondents various employees of the Department.[3] In his petition, Appellant stated a claim for replevin based on the Department's failure to comply with the procedures mandated in *Bundy*. He thus sought to recover the $860 the Department had deducted from his inmate account, together with interest and fees. He also requested nominal damages.[4]

Separately, Appellant alleged his due process rights were violated in that he should have received an administrative ability-to-pay hearing predicated on an alleged change in his circumstances. In this respect, Appellant referenced a passage in *Bundy* which clarified that, under prevailing Pennsylvania law as established by the Commonwealth Court, prisoners are entitled to an ability-to-pay hearing with regard to Act 84 deductions when there has been a material change of circumstances such as a threat of additional confinement, or increased supervision, as a result of unpaid financial obligations. *Bundy* noted that, under the Commonwealth Court's rationale, a valid issue arises as to whether that rule should be extended to encompass a situation where the Act 84 deductions interfere with the prisoner's ability to obtain meaningful merits review of the financial aspects of his sentence, his ability to litigate a PCRA petition, or the like. *See Bundy*, 646 Pa. at 261-62, 184 A.3d at 559.

---

[3] For convenience, the respondents (Appellees herein) will be referred to collectively as the Department.

[4] The Commonwealth Court granted Appellant's request to proceed *in forma pauperis*.

After the Department preliminarily objected, Appellant was granted leave to file an amended petition. In it, he incorporated by reference the allegations in his first petition, and added a new cause of action purportedly sounding in negligence. Specifically, Appellant alleged that the prison counselor had negligently misinformed him in 2013 that the Act 84 deductions were lawful. He averred, more generally, that the Department was negligent in its administration of his inmate account because it withdrew funds without giving him the process which was due. In terms of relief, Appellant again asked for a refund of the monies the Department had withdrawn from his account, together with interest, fees, and nominal damages.

The Department filed preliminarily objections in the nature of a demurrer. It maintained that Act 84 gave it the authority to effectuate the deductions based on the sentencing orders, and that, in light of *Buck v. Beard*, 583 Pa. 431, 879 A.2d 157 (2005), the Department was not required to provide an ability-to-pay hearing before the first deduction.

Insofar as Appellant's claim pertained to alleged negligence, the Department made several arguments. First, it stated that the two-year limitations period pertaining to negligence claims had begun to run when the first deduction was made in 2013, and that it expired well before Appellant filed his petition for review in 2018.[5] In any event, the Department continued, it was not clearly established under Pennsylvania law in 2013 – before *Montanez* or *Bundy* were decided – that the Department had a constitutional obligation to implement procedural safeguards before the first Act 84 deduction was effectuated. Thus, according to the Department, there was no standard

---

[5] Referencing *Davis v. Commonwealth*, 660 A.2d 157 (Pa. Cmwlth. 1995), the Department asserted that an affirmative defense based on the statute of limitations may be raised in preliminary objections where it appears on the face of the pleading to which objections are being raised. *See id.* at 159 n.2.

of care pursuant to which the Department was required to afford pre-deprivation process, and, moreover, the Department was immunized from liability under the doctrine of qualified immunity, which shields government officials from lawsuits based on allegedly unconstitutional actions so long as those officials did not violate individual rights which were clearly established at the time, and about which a reasonable government official would have known. *See Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009); *Montanez*, 773 F.3d at 487-88. Finally, the Department contended that, in essence, Appellant's allegations referred to intentional, not negligent, conduct – specifically, the Department's intentional withdrawal of money from his account, and the prison counselor's intentional statement to Appellant in 2013 that the deductions were lawful – and that recovery for intentional conduct by the state is precluded under the doctrine of sovereign immunity.

Appellant filed preliminary objections to the Department's preliminary objections, asserting that: the two-year time bar for negligence claims did not apply because the Department was guilty of fraudulent concealment; qualified immunity was inapplicable because *Bundy*'s due process requirements were clearly established in 2013 by various judicial decisions; and the Department's own internal policy statement, entitled DC-ADM-005 (relating to the collection of inmate debts), recognized as early as 2007 that the Department was supposed to give him, prior to the first deduction, a memo informing him of the imminent deductions together with a copy of the official court documents relied on for such deductions.[6]

In a non-precedential decision, the Commonwealth Court sustained the Department's preliminary objections and dismissed the petition for review. *See*

---

[6] Notably, Appellant did not aver that the policy document at that time required the Department to give the inmate an opportunity to object to the deductions.

*Johnson v. Dep't of Corr.*, No. 497 M.D. 2018, 2019 WL 2400295, at *12 (Pa. Cmwlth. June 3, 2019). The court initially deemed the amended petition's negligence assertion to have replaced the replevin claim in the initial petition. *See id.* at *5. The Commonwealth Court ultimately dismissed the purported negligence claim on the grounds asserted by the Department, *i.e.,* that Appellant's alleged harm stemmed entirely from intentional conduct. *See id.*

The court then turned to what it termed the "Act 84 claims." Although Appellant had not raised any "Act 84 claims" as such, the phrase seems to be shorthand for a contention that the Act 84 deductions were invalid. In this regard, the court's reference to additional claims evidently stemmed from the amended petition's inclusion of various allegations under the headings, "Questions Involved," and "Allegations Common to All Claims." These assertions can be read as alleging that: the Department did not provide Appellant with a signed court order imposing financial responsibilities as part of his sentence; the Department did not hold an ability-to-pay hearing as required when there has been a change in circumstances – such as a threat of additional confinement or increased conditions of supervision as a result of unpaid financial obligations – or when the Act 84 deductions will materially hinder the prisoner's ability to obtain meaningful merits review of his sentence; and the Department violated due process when it made Act 84 deductions without pre-deprivation notice and an opportunity to be heard.

As to these contentions, the court first concluded that the costs included as part of Appellant's sentences did not depend on a signed court order because they were imposed by statutes stating that no such order is needed, *see id.* at *6 & n.10 (quoting 42 Pa.C.S. §9721(c.1), 18 P.S. §11.1101). The court additionally expressed that Appellant did not allege that he had experienced a relevant change of circumstances,

and his PCRA docket sheets showed he was granted *in forma pauperis* status and was actively litigating his post-conviction matters. *See id.* at \*7 & n.13.[7]

As for the due process claim, the court initially rejected the Department's qualified immunity argument, suggesting that several pre-*Montanez* Third Circuit decisions had clarified that, when pre-deprivation process can effectively prevent errors, that process is constitutionally required. *See id.* at \*9. With that said, however, the court added that the due process claim accrued when the Department made its first Act 84 deduction from Appellant's account in 2013, with the result that the two-year statute of limitations had expired by the time Appellant filed his petition for review in 2018, *see id.* at \*8-\*10. *See generally Morgalo v. Gorniak*, 134 A.3d 1139, 1147-48 (Pa. Cmwlth. 2016) (holding that the two-year limitation period of Section 5524(6) of the Judicial Code applies to Act 84 deductions). In this latter regard, the court rejected Appellant's fraudulent-concealment argument on the basis that it implicates an inquiry into whether the plaintiff was reasonably diligent in informing himself of the facts on which he based his right to recover. The court determined that Appellant did not exercise adequate diligence as he could have inquired into the state of the law himself. To bolster its point, the court noted that Appellant had found all the relevant case precedent and departmental policy documents for purposes of the present litigation, and these existed and could just as easily have been found by him in 2013 when he received the counselor's response. *See id.* at \*11.

---

[7] To the extent Appellant argued that Section 9726 of the Sentencing Code required the common pleas court to consider his ability to pay, *see* 42 Pa.C.S. §9726(c)(1), the intermediate court pointed out that that provision does not impose any obligation on the Department, and moreover, it only applies to fines, whereas Appellant's debt arose from court costs and a Victims' Fund assessment. *See Johnson*, 2019 WL 2400295, at \*8.

Appellant lodged a direct appeal in this Court, raising a number of issues relating to the purported negligence cause of action and the due process claim, as well as his alleged entitlement to an administrative ability-to-pay hearing. He does not presently challenge the Commonwealth Court's determination that the negligence claim replaced the replevin cause of action appearing in the initial petition. At any rate, this Court observed in *Bundy* that replevin has been abolished in the context of an original-jurisdiction petition for review relative to a determination of a government unit. *See* Pa.R.A.P. 1502; *Bundy*, 646 Pa. at 255, 184 A.3d at 555. As explained below, the negligence and due process claims are one and the same. We will address those first, and then consider Appellant's argument relating to an ability-to-pay hearing.

## II.

We will initially consider the purported negligence cause of action, which was set forth in the amended petition as follows:

20. Petitioner is an adult person being held by [the Department]. As such, petitioner has personal private property containing money which is in the care, custody and control of the respondents.

21. Accordingly, respondents owed the petitioner a duty to exercise reasonable care and diligence when handling the petitioner's inmate account which consisted of his personal private property.

22. At all relevant times to this action the respondents owed a duty to maintain, regulate and operate the petitioner's inmate account with ordinary care and diligence in a manner consistent with Federal Law and D.O.C. Policy.

23. Respondents breached their duties by failing to exercise ordinary care and reasonable diligence in maintaining, regulating and operating the petition's inmate account including: (a) Failing to give the petitioner notice and an opportunity to object to the Act 84 deductions before the first deduction; (b) failing to follow Federal and State Law and D.O.C. Policy when operating the petitioner's account by failing to give notice prior to the

first deduction; (c) Failing to follow D.O.C. Policy DC-ADM 005 Sect. 3.A.2.d. when operating the petitioner's inmate account by failing to inform the petitioner of the deductions and his right to appeal the deductions.

24. Despite the fact that *respondents knew that notice and an opportunity to object was required before making the first deduction* (which is admitted by the respondents in their Grievance response, see, PFR-Exhibit-GR) the respondents proceeded to and continued to *negligently deduct funds from petitioner's inmate account* and continues [sic] to deduct funds till this day.

25. As a direct and proximate consequence of respondents negligent handling and operating of the petitioner's inmate account, the *petitioner suffered injury and damages in the form of a complete 14th Amendment procedural due process violation* which further resulted in actual monetary loss in excess of $859.80.

*Johnson v. Wetzel*, No. 497 MD 2018, Amended Petition for Review at ¶¶20-25 (Pa. Cmwlth.) (emphasis added).

Certain features of these allegations are worth highlighting. First, the sum and substance of the complaint as a whole, including the above allegations, is that the Department violated Appellant's procedural due process rights based on intentional conduct. *Accord* Brief for Appellees at 9 (observing that the transfer of funds from Appellant's account to satisfy court costs "was intentional, not negligent, conduct," and "[t]he failure to provide notice before commencing Act 84 deductions, does not render it a negligent taking"). Simply labeling the claim as one sounding in negligence does not make it so where the harm is alleged to have been caused by the Department's actions in deducting monies from Appellant's account pursuant to Act 84 and then telling him after the fact that the deductions were authorized by that statute.

This is not a situation such as that which arose in *Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908 (1981), in which a prison employee's negligent handling of an inmate's personal property led to that property being lost or destroyed. *See id.* at 530, 101 S. Ct. at 1910. Indeed, such negligent conduct does not implicate the Due Process Clause.

*See Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986). Rather, and as can be seen from the complaint as a whole, this case involves an intentional monetary deduction from Appellant's account pursuant to statutory authority which is only contested on the basis of the alleged due process violation.[8] Put differently, the conduct which is alleged to have fallen below a particular standard of care only relates to the lack of pre-deprivation process, and not to the deprivation itself.

Even addressing the above negligence claim in isolation, it is internally inconsistent because Appellant avers that corrections employees "negligently deducted funds" from his account at a time when "they knew that notice and an opportunity to object was required before making the first deduction." We conclude, then, that the claim is properly read as alleging a deprivation of property through intentional conduct. That being the case, sovereign immunity shields the Department from liability. *See* PA. CONST. art. I, §11; 1 Pa.C.S. §2310; *Sutton v. Bickell*, ___ Pa. ___, ___, 220 A.3d 1027, 1035 (2019) (explaining that sovereign immunity protects the Department from liability in tort for intentional conduct undertaken within the scope of the party's employment (citing *Justice v. Lombardo*, ___, Pa. ___, ___, 208 A.3d 1057, 1067 (2019))).

It may also be recognized that the harm alleged by Appellant – a loss of money from his account – constitutes an injury of which he admits he was aware as early as July 2013. *See Johnson v. Wetzel*, No. 497 MD 2018, First Petition for Review at ¶13 (Pa. Cmwlth.). As such, the two-year statute of limitations applicable to Act 84 deductions, *see generally Morgalo*, 134 A.3d at 1147 (analyzing 42 Pa.C.S. §5524(6)), had expired well before Appellant commenced this litigation in 2018, as the Department pointed out in its demurrer. *See Johnson v. Wetzel*, No. 497 MD 2018, Respondents'

---

[8] Appellant did not allege that the monies in question were outside Act 84's reach based on factors such as those identified in *Bundy*. *See supra* note 2.

Preliminary Objections to Petitioner's Amended Petition for Review at ¶¶19-23 (Pa. Cmwlth.).

Although Appellant argued that the limitations period was tolled in light of the Department's alleged fraudulent concealment, *see Johnson v. Wetzel*, No. 497 MD 2018, Petitioner's Answer to Respondents' Preliminary Objections at ¶¶12-24 (Pa. Cmwlth.), that doctrine ordinarily pertains to conduct on the part of the defendant which "causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Fine v. Checcio*, 582 Pa. 253, 271, 870 A.2d 850, 860 (2005); *accord Appeal of Sepko*, 479 A.2d 665, 667 (Pa. Cmwlth. 1984); 1A Stuart M. Speiser *et al.*, AMERICAN LAW OF TORTS §5:31 n.67 (1983 & Supp. 2020) ("Generally, the misrepresentations relied on must be misrepresentations of fact and not misrepresentations of law since all are presumed to know the law." (citation omitted)). This Court has never applied it to an assertion that the defendant misrepresented the current state of the *law*.[9]

In all events, Appellant included within the purported negligence contention an averment that the Department "knew that notice and an opportunity to object was required before making the first deduction." This again clarifies that Appellant's cause of action does not sound in negligence, or even in an intentional tort such as conversion

---

[9] Some states, proceeding under an "estoppel" or "good cause" rubric, have allowed an untimely filing where the plaintiff was misled as to the statute of limitations. *See, e.g.*, *Ginns v. Savage*, 393 P.2d 689, 691-92 (Cal. 1964); *Tex. Emp'rs' Ins. Ass'n v. Dickson*, 489 S.W.2d 655, 657 (Tex. Civ. App. 1972). Here, however, Appellant does not allege that the Department misrepresented the statute of limitations, and it is uncontested that he became aware of his underlying injury, *i.e.*, the deduction of money from his account, almost immediately after it occurred. Moreover, inmates are not assumed to be ignorant of the law particularly as it relates to the satisfaction of monetary obligations imposed at sentencing. *See Buck*, 583 Pa. at 436, 879 A.2d at 160 (explaining that, because the prisoner plaintiff was convicted after Act 84 went into effect, he was on notice of the Department's statutory authority to deduct funds from his account).

that he has failed to assert – but in procedural due process. The question, then, is whether Appellant is entitled to relief on his due process claim.

**III.**

To review, prisoners are entitled, under the Due Process Clause of the Fourteenth Amendment, to notice of certain items and a reasonable opportunity to object before the first Act 84 deduction is made. These items include the Department's Act 84 deduction policy, the prisoner's total monetary obligation to the Commonwealth, the rate at which funds will be deducted from his account, and the funds which will be subject to withdrawals. *See Bundy*, 646 Pa. at 261, 184 A.3d at 558. This case differs from *Bundy* in that the first Act 84 deduction occurred before either *Montanez* or *Bundy* was decided. Until those decisions were announced, no reported judicial decision had held that every inmate in the Department's custody from whose account Act 84 deductions would be made was entitled to such process.

Still, individuals in Appellant's position are placed in a difficult position as their first Act 84 deduction occurred before the holdings in *Bundy* and *Montanez* were announced. Plainly, such individuals could not have relied on those decisions as a basis to demand pre-deprivation procedural safeguards. These individuals, moreover, may have had grounds such as those outlined in *Bundy* to challenge the validity of the Department's deduction plan.

With the above in mind we note that, when pre-deprivation process is not feasible – meaning that the state is not in a position to provide it – "the availability of a meaningful post-deprivation remedy satisfies due process." *Bundy*, 646 Pa. at 258-59, 184 A.3d at 557 (citing *Zinermon v. Burch*, 494 U.S. 113, 128, 110 S. Ct. 975, 984-85 (1990)). We now hold that that aspect of *Bundy* applies to inmates whose accounts were subject to Act 84 deductions without the benefit of pre-deprivation safeguards.

Thus, due process requires that the Department, in response to an administrative grievance which accurately recites that no *Bundy* process was afforded prior to the first Act 84 deduction, must give the grievant notice of the items required by *Bundy* and a reasonable opportunity to explain why the past and/or intended deductions should not take place notwithstanding the dictates of Act 84. Any meritorious challenge along these lines would then implicate the substantive remedy of restoring the prisoner's wrongly-deducted funds to his or her account.[10]

## IV.

We now apply the above holding to this case. The record reflects that, in response to Appellant's grievance in June 2018 concerning the lack of pre-deprivation process, SCI-Rockview suspended deductions for three weeks to give Appellant an opportunity to challenge their the legitimacy. *See Johnson v. Wetzel*, No. 497 MD 2018, First Petition for Review at Exh. GR (Pa. Cmwlth.) (Grievance Response No. 742476). Although this type of temporary suspension is consistent with the "fundamental [due process] requirement" that the individual have an "opportunity to be heard at a meaningful time and in a meaningful manner," *Commonwealth v. Maldonado*, 576 Pa. 101, 108, 838 A.2d 710, 714 (2003) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976)), the record does not clarify whether all of the information contemplated by *Bundy* and *Montanez* was given to Appellant when the deductions were temporarily suspended. As recited above, these items include the Department's Act 84 deduction policy; the amount of Appellant's total financial obligation to the government; the rate at which funds will be deducted; and the identity of the funds

---

[10] To clarify, for a challenge to be meritorious, it is not enough that pre-deprivation procedures were not afforded to the grievant. He must also identify some substantive basis to conclude the Act 84 deductions were, or would be, contrary to law.

subject to withdrawal. Thus, we will remand the matter for further factual development on this topic and an appropriate procedural remedy if one is required.

## V.

Finally, Appellant renews his argument that he was entitled to an administrative ability-to-pay hearing before the Department. He faults the Commonwealth Court for focusing solely on whether he might be subject to additional confinement or increased supervision as a result of not meeting his financial obligations. Appellant posits that this type of issue is distinct from the other concern expressed in *Bundy* that could support entitlement to an ability-to-pay hearing: namely, that a prisoner's capability of obtaining meaningful merits review of the financial aspects of his sentence should not be substantially encumbered by the Department's Act 84 deductions. *See* Brief for Appellant at 20-21.

By way of background, on remand from this Court's decision in *Bundy*, the Commonwealth Court reviewed its own jurisprudence on which this Court had relied, and concluded that *Bundy* should be read as requiring an administrative ability-to-pay hearing only where a material change in circumstances occurs between sentencing and the first Act 84 deduction. *See Bundy v. Wetzel*, No. 553 M.D. 2016, 2019 WL 1613026, at *8 (Pa. Cmwlth. Apr. 12, 2019) ("*Bundy II*"); *see also Stewart v. Office of Clerk for Cumberland Cty. Common Pleas Court*, No. 361 M.D. 2018, 2019 WL 3986268, at *7 (Pa. Cmwlth. Aug. 23, 2019) (following *Bundy II* and requiring proof of "a sufficient change in circumstances between the time of sentencing and the time of collection to trigger a pre-deduction hearing on [the inmate's] ability to pay court-imposed fines"). Appellant does not challenge the Commonwealth Court's prevailing interpretation of this Court's holding in *Bundy*, and thus, we have no occasion to address it in the present appeal. Insofar as this dispute is concerned, the relevant facet

of *Bundy* – the one on which Appellant presently relies – suggests that the circumstances in view can relate, not only to increased conditions of supervision and the like, but to an inability to "obtain meaningful merits review of the financial aspects of his sentence through direct appeal or post-conviction proceedings." *Bundy*, 646 Pa. at 262, 184 A.3d at 559.

Appellant's claim ultimately fails on two grounds. First, he has not stated that the alleged change in circumstances occurred between sentencing and the first Act 84 deduction as required under prevailing law per the explanation above. Even putting that omission aside in light of the customary leniency with which we construe *pro se*, prison-drawn allegations, *see Sutton v. Bickell*, ___ Pa. ___, ___, 220 A.3d 1027, 1035 (2019) (citing *Bundy*, 646 Pa. at 261, 184 A.3d at 559), Appellant proceeds from a faulty premise. Although the Commonwealth Court did observe that Appellant had failed to allege he would be subject to additional confinement or increased conditions of supervision due to his failure to pay his costs, *see Johnson*, 2019 WL 2400295, at *8, it separately rejected the alternative proposed basis for an ability-to-pay hearing, reasoning that Appellant

> does not aver that his PCRA actions are hindered by the alleged change in circumstances. A review of the dockets for Johnson's various PCRA actions, the docket numbers of which are included in an attachment to the [first p]etition, reveals that Johnson was granted *in forma pauperis* status and is actively litigating those cases.

Id. at *7 n.13 (citing First Complaint Exh. CS1; Superior Court Docket Nos. 3497 EDA 2017, 450 EDA 2018, 879 EDA 2018). Our own review of those docket sheets, as well as another matter included in Exhibit CS2, *Commonwealth v. Johnson*, 51 EM 2018 (Pa.), confirms that the matters have all been litigated to completion, thus rendering the present issue moot. That being the case, we will affirm the Commonwealth Court's ruling that Appellant is not entitled a departmental ability-to-pay hearing.

## VI.

In sum, we reach the following holdings: in substance, Appellant raises a single due process claim and no distinct negligence claim; where an inmate, whose Act 84 deductions began before *Bundy* and *Montanez* were decided, grieves those deductions by accurately reciting that no *Bundy* process was afforded prior to the first one, due process mandates that the Department afford post-deprivation process analogous to the pre-deprivation procedures required by *Bundy*; further development is required to determine whether the Department has already supplied Appellant with adequate post-deprivation process; and Appellant has failed set forth a valid basis to implicate an administrative ability-to-pay hearing.

The order of the Commonwealth Court is affirmed in part and vacated in part. It is affirmed insofar as it dismissed Appellant's claims relating to negligence and an administrative ability-to-pay hearing. It is vacated to the extent it dismissed Appellant's claim relating to due process. The matter is remanded for further proceedings consistent with this opinion.

Justices Baer, Todd, Dougherty and Mundy join the opinion.

Justice Wecht files a concurring and dissenting opinion in which Justice Donohue joins.